**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION**

| | | |
|---|---|---|
| SHELBY "SETH" GREEN, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | |
| | ) | |
| THE DIXIE GROUP, INC. | ) | |
| (TENNESSEE), | ) | |
| | ) | |
| Defendant. | ) | |

## <u>COMPLAINT</u>

Plaintiff SHELBY "SETH" GREEN hereby states claims for relief under Title VII, 42 U.S.C. § 2000e *et seq*., on the grounds set forth below.

## *<u>Jurisdiction and Venue</u>*

1.      The Court (a) has original jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, and (b) pursuant to 42 U.S.C. § 2000e-5(f)(3) because this action arises under Subchapter VI of Title VII.

2.      Venue is proper in this district under 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims in this action occurred in the Northern District of Georgia, Rome Division.

- 1 -

### *The Parties*

3.    Plaintiff SHELBY "SETH" GREEN ("PLAINTIFF") is a citizen of the United States who resides in Murray County in the Northern District of Georgia, Rome Division.

4.    Defendant THE DIXIE GROUP, INC. (TENNESSEE) ("DEFENDANT") is a Tennessee for-profit corporation with its principal place of business at 475 Reed Road, Dalton GA 30720 and may be served with process by delivering a copy of the Summons and Complaint to its registered agent for service, CT Corporation System, 289 S. Culver Street, Lawrenceville, GA 30046-4805.

5.    DEFENDANT is subject to the personal jurisdiction of this Court.

### *Compliance with Administrative Prerequisites*

6.    PLAINTIFF has timely complied with all legally required administrative prerequisites before filing this action.

### *Grounds for this Action*

7.    DEFENDANT manufactures and sells floor covering throughout the United States.

8.    PLAINTIFF's birth sex is female.

9.    PLAINTIFF identifies as male.

10.   On or about March 6, 2025, PLAINTIFF responded to DEFENDANT's on-line job posting for a factory worker at its Chatsworth

facility, 3641 Highway 411 N., Chatsworth GA 30705, by going to the Human Resources ("HR") Department in the facility and completing a job application.

11. On the application, PLAINTIFF stated his name as "Seth Green."

12. PLAINTIFF's birth name was "Shelby Green" before transitioning to male and going by "Seth."

13. PLAINTIFF submitted the completed application to HR Assistant ("HRA") Lisa Suddeth.

14. A short time later, HR Manager ("HRM") Mark Chaffin interviewed PLAINTIFF.

15. During the interview, PLAINTIFF's work history was discussed.

16. HRM Chaffin said PLAINTIFF would be working on the night shift and could start on Sunday, March 9, 2025.

17. HRM Chaffin concluded the interview by saying he would review PLAINTIFF's application and call PLAINTIFF.

18. Later on or about March 6, 2025, PLAINTIFF received a call from HRA Suddeth offering PLAINTIFF a job with DEFENDANT at $14.70 per hour.

19. PLAINTIFF immediately accepted DEFENDANT's job offer.

20. HRA Suddeth then instructed PLAINTIFF:

(a) To return to the Chatsworth facility the next day, March 7, 2025, for orientation; and

(b)    To start work at the Chatsworth facility on Sunday, March 9, 2025, at 11:00 p.m.

21.    As of the end of that March 6, 2025 phone call, DEFENDANT had hired PLAINTIFF as a factory worker at its the Chatsworth facility at $14.70 per hour.

22.    On or about March 7. 2025, PLAINTIFF returned to DEFENDANT's HR Department at the Chatsworth facility for orientation, as HRA Suddeth had instructed.

23.    HRM Chaffin then took PLAINTIFF on a tour of the facility and identified where PLAINTIFF would be working.

24.    On returning to the HR Department, HRA Suddeth called PLAINTIFF into her office and asked for PLAINTIFF's driver's license and Social Security card.

25.    PLAINTIFF provided the requested items.

26.    The driver's license showed PLAINTIFF's photograph before the transgender transition—with long hair and as a woman.

27.    The driver's license also showed PLAINTIFF's name as "Shelby Green" and listed PLAINTIFF's sex as female.

28.    HRA Suddeth, obviously confused, looked again at PLAINTIFF's driver's license and then back at PLAINTIFF.

29.    Plaintiff addressed HRA Suddeth's confusion, saying:

- 4 -

(a)    "It's me, I promise"; and

(b)    "I understand you'll need to use my legal name on all the documents, but I prefer to go by 'Seth'."

30.    HRA Suddeth said "okay" and made copies of PLAINTIFF's driver's license and Social Security card.

31.    HRA Suddeth then left her office with PLAINTIFF's driver's license and Social Security card in hand and met with HRM Chaffin.

32.    About five minutes later, HRA Suddeth and HRM Chaffin returned to her office, where PLAINTIFF remained, and closed the door.

33.    HRM Chaffin stated:

(a)    "We seem to have a little issue"; and

(b)    "The name on your driver's license does not match the name on your job application."

34.    PLAINTIFF explained that the name "Seth Green" was used on the application because that is PLAINITFF's preferred name.

35.    HRA Suddeth then said, "You could get us audited for putting 'Seth' on the application instead of your legal name."

36.    After HRM Chaffin confirmed that PLAINTIFF's application had not yet been entered into DEFENDANT's computer system, PLAINTIFF:

(a)    Offered to write PLAINTIFF's legal name on the application;

(b)   Asked for a pen to do so; and

(c)   Also offered to fill out a new application using PLAINTIFF's legal name.

37.   HRM Chaffin responded, "I have no problem letting you do that, but we could still be audited for falsifying information."

38.   HRM Chaffin's remark about an audit was incorrect—and he knew it was incorrect—because, if PLAINTIFF's legal name were substituted on the application before DEFENDANT entered the application in its system, then no "false" information (even assuming PLAINTIFF's initial application contained "false" information) would be included.

39.   HRM Chaffin then said, "We don't mind how you are, we don't mind, it's not that we mind"—overtly acknowledging that he knew PLAINTIFF was transgender and that PLAINTIFF was born female and now identified as male.

40.   HRM Chaffin then gave PLAINTIFF a blank application to complete.

41.   HRM Chaffin waited while PLAINTIFF finished the second application using the name "Shelby Green"—and gave it to HRM Chaffin.

42.   HRM Chaffin then terminated PLAINTIFF.

43.   Alternatively, HRM Chaffin then withdrew his job offer to PLAINTIFF.

- 6 -

44.     Alternatively, HRM Chaffin then failed to hire PLAINTIFF.

45.     Upon PLAINTIFF giving the second application to HRM Chaffin, HRM Chaffin stated:

(a)     "I'm sorry it just didn't work out."

(b)     "I'm going to take your application and put it in the stack, and it's a pretty thick stack."

(c)     "But if we get to pulling applications again, and you're still a good fit, and if the application qualifies, then we'll give you a call back."

46.     PLAINTIFF then left DEFENDANT's facility.

47.     On or about March 7, 2025—after HRA Suddeth received a call from PLAINTIFF's mother asking whom her attorney should call—HRM Chaffin called PLAINTIFF twice and left voice messages stating that PLAINTIFF could have the job back and asking that PLAINTIFF call him.

48.     On or about March 7, 2025, several hours after HRM Chaffin's second call to PLAINTIFF, DEFENDANT's Vice President of HR ("VP") Derek Davis called PLAINTIFF's mother and left a voice message offering PLAINTIFF's job back.

49.     VP Davis's message was that PLAINTIFF should call HRM Chaffin to schedule a time to complete the orientation and then start working for DEFENDANT.

50. On or about March 7, 2025, at 3:00 p.m., PLAINTIFF called HRM Chaffin and told him that PLAINTIFF declined DEFENDANT's offer because PLAINTIFF did not feel comfortable working for DEFENDANT after what PLAINTIFF had experienced that morning.

51. PLAINITFF declined DEFENDANT's offer to return to work because PLAINTIFF did not believe a productive and amicable relationship would be possible—as PLAINTIFF's self-worth was crushed by the way HRA Suddeth and HRM Chaffin treated PLAINTIFF after they realized PLAINTIFF is transgender and identified as male, PLAINTIFF felt humiliated, PLAINTIFF felt like there would be a target on PLAINTIFF's back at the facility; and PLAINTIFF felt that any relationship PLAINTIFF could have with DEFENDANT had been irreparably damaged.

52. From on or about March 6, 2025 to on or about March 7, 2025, PLAINTIFF was an "employee" of DEFENDANT within the meaning of 42 U.S.C. § 2000e(f) of Title VII.

53. From on or about March 6, 2025 to on or about March 7, 2025, PLAINTIFF was employed by DEFENDANT.

54. From on or about March 6, 2025 to on or about March 7, 2025, DEFENDANT was an "employer" within the meaning of 42 U.S.C. § 2000e(b) of Title VII.

55. DEFENDANT has had more than 15 employees in each of 20 or more calendar weeks in the calendar year of 2025 or preceding calendar year.

56. DEFENDANT has had more than 500 employees in each of 20 or more calendar weeks in the calendar year of 2025 or preceding calendar year.

57. DEFENDANT engaged in an industry affecting commerce in the calendar year of 2025 or preceding calendar year.

58. PLAINTIFF's gender was a motivating factor in DEFENDANT's discriminatory treatment of PLAINTIFF.

**COUNT 1**
**Discriminatory Treatment**
**42 U.S.C. § 2000e-2(a)**

59. PLAINTIFF hereby realleges and incorporates by reference Paragraphs 1-58 of this Complaint.

60. By engaging in the conduct described above in Paragraphs 7-51, DEFENDANT unlawfully discriminated against PLAINTIFF because of PLAINTIFF's gender with respect to PLAINTIFF's termination, and other terms, conditions, and privileges of employment, in violation of 42 U.S.C. § 2000e-2(a).

61. By engaging in the conduct described above in Paragraphs 7-51, DEFENDANT unlawfully discriminated against PLAINTIFF because of PLAINTIFF's gender, alternatively, with respect to the withdrawal of

PLAINTIFF's job offer, and other terms, conditions, and privileges of employment, in violation of 42 U.S.C. § 2000e-2(a).

62.   By engaging in the conduct described above in Paragraphs 7-51, DEFENDANT unlawfully discriminated against PLAINTIFF because of PLAINTIFF's gender, alternatively, with respect to the failure to hire PLAINTIFF, and other terms, conditions, and privileges of employment, in violation of 42 U.S.C. § 2000e-2(a).

63.   As a result of the conduct described in this Count 1, PLAINTIFF has suffered and is continuing to suffer injury including, but not limited to, physical pain, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and non-pecuniary losses.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff SHELBY "SETH" GREEN respectfully prays that this Court enter judgment in favor of PLAINTIFF and against DEFENDANT for:

A.   Lost wages, employment benefits, and other compensation to which PLAINTIFF is entitled.

B.   Compensatory damages including, but not limited to, physical pain, emotional pain, suffering, and inconvenience, mental anguish, loss of enjoyment of life, loss of dignity, loss of reputation, and any other pecuniary

and non-pecuniary losses or intangible injuries to which PLAINTIFF is entitled.

C.     Punitive damages to which PLAINTIFF is entitled.

D.     All litigation expenses, including reasonable attorney's fees and costs of the action, through entry of a final non-appealable judgment to which PLAINTIFF is entitled for:

(1)     The time spent plus costs incurred throughout this action;

(2)     The time spent litigating both the entitlement to and amount of attorney's fees and costs incurred throughout this action plus costs of investigation and litigation reasonably incurred, whether in connection with any settlement, compromise, any accepted offer of judgment under Fed. R. Civ. P. 68, or any other form of judgment entered pursuant to Fed. R. Civ. P. 68;

(3)     The time spent litigating the fairness and reasonableness of any settlement, compromise, or accepted offer of judgment under Fed. R. Civ. P. 68, or any other form of judgment entered pursuant to Fed. R. Civ. P. 68; and

(4)     The time spent explaining to PLAINTIFF any settlement, compromise, or accepted offer of judgment under Fed. R. Civ. P. 68, or any other form of judgment entered pursuant to Fed. R. Civ. P. 68.

E.      Pre-judgment and post-judgment interest on all amounts awarded, including litigation expenses that include attorney's fees, costs, and costs of investigation and litigation of this action.

F.      A declaration that DEFENDANT engaged in unlawful conduct with respect to PLAINTIFF.

G.      An order directing DEFENDANT to include in PLAINTIFF's personnel file a copy of the operative complaint and any favorable verdict and judgment in this action.

H.      All such other legal and equitable relief to which PLAINTIFF is entitled as a matter of law and equity.

## JURY DEMAND

Plaintiff demands a jury trial on all issues triable of right by a jury.

Respectfully submitted,

**/s/ *Alan H. Garber***
Alan H. Garber, GA Bar No. 283840
Marc N. Garber, GA Bar No. 283847
THE GARBER LAW FIRM, P.C.
4994 Lower Roswell Rd Ste 14
Marietta, GA 30068-5648
(678) 560-6685
ahgarber@garberlaw.net
mngarber@garberlaw.net

***Attorneys for the Plaintiff***

- 12 -